MONTGOMERY, ASSIGNEE, v. BUCYRUS MACHINE WORKS.

A., relying upon the representations of D., that the firm of B., C., and D., of which he was a member, was perfectly solvent, and that B. was wealthy, sold it goods.  D. having, without the knowledge of A., retired from the firm, an arrangement was entered into whereby the proceeds of the sale of such goods remaining in the hands of the agents of the firm of B., C., and D., were applied to discharge the debt due to A., and the unsold portion of such goods returned to him.  A., at the time, believed that B. and C. were insolvent; and they were within four months from such arrangement adjudged bankrupts.  *Held*, that the representations of D. were a fraud upon A., on account of which he could have rescinded the contract of sale, and followed the goods wherever he could find them; and the goods not having lost their identity, nor become part of the permanent stock of B. and C., upon which they obtained credit, their assignee cannot, in the absence of actual fraud in the arrangement for the payment of such proceeds, recover them in a suit against A.

ERROR to the Circuit Court of the United States for the Western District of Missouri.

*Mr. James Baker* for the plaintiff in error.

*Mr. T. W. Bartley* and *Mr. S. E. Jenner*, contra.

MR. JUSTICE DAVIS delivered the opinion of the court.

There can be no question, on the conceded facts of the case, that Stewart, Porter, and Wallace were copartners, under the firm name of Stewart, Porter, & Co.; and that they are bound by the duties and obligations arising out of that relation, so far as the transactions and contract with the defendant are concerned.  The firm was formed at Sedalia, Mo., in January, 1870, by Stewart and Porter, to deal in agricultural implements, with a view to include Wallace, if he chose to join it; and the name of the partnership was taken for this purpose. Wallace was sent by them soon after this to Ohio, where the works of the defendant, a manufacturing corporation, were situated, to make contracts with it as their partner, if he elected to become such.  This election was all that was required to render him a member of the firm: there was no necessity that he should sign any articles of copartnership.

Wallace, when he reached Ohio, elected to join the firm. Pursuant to the express authority conferred upon him by his associates in business, he entered into a contract of purchase

with the defendant, to whom he represented that the firm, consisting of Stewart, Porter, and himself, was solvent and doing a good business, and that Porter was wealthy. Previously to this the defendant knew nothing of the firm, but, relying on the truth of his statements, parted with its property to a firm composed of Stewart, Porter, and Wallace; nor did it learn of the retirement of Wallace from the firm until after proceedings in bankruptcy had been commenced against Stewart and Porter. It dealt throughout, as it had commenced, with a firm composed of the three persons, which, so far as it is concerned, was not changed.

It is true, before closing its dealings, it acted under the mistaken belief that this firm was insolvent. The firm owed no one else; and the firm composed of Stewart and Porter, which was insolvent, was not indebted to the defendant.

By the terms of the contract made by Wallace, on behalf of the firm, with the corporation, one car-load of machines was sold and delivered at the time; and there was a further agreement to fill all orders as soon as practicable. From time to time, orders were given, and machines forwarded. They were generally shipped direct to the different persons who had engaged to sell them for Stewart, Porter, & Co.; and the proceeds of these machines, when sold, were applied, with the consent of all parties, to discharge the debt due the corporation, and the unsold machines were returned to it.

The defendant had the right to rescind the contract on the ground of fraud, and follow the property or its proceeds wherever they could be found. This it did not do, because its agents and officers had no reason to believe that Wallace had actually misled them to its injury until after the machines were all forwarded. But equity and good conscience required that the proceeds of property obtained from it by fraud should be paid to it, or that the property itself, if unsold, be returned. This was recognized by Stewart, Porter, and Wallace; and the arrangement by which this was done is binding on them and the corporation. The machines did not lose their identity; nor can it be said that they formed a part of the permanent stock of goods of the bankrupts, Stewart and Porter, so that they can be considered as having thereby obtained credit.

Their creditors, therefore, have no right to complain, as the settlement was made in the absence of actual fraud; and the mere fact, that, when it was made, the corporation knew that Porter and Stewart were insolvent, does not render it fraudulent under the Bankrupt Law. The transaction by which it got part of the machines back, and received the proceeds of those which had been sold, was, under the circumstances, most equitable; and it cannot be defeated by the consideration that Wallace, after he had made the contract, was allowed to retire from the firm. It would be a great wrong to the corporation, who knew nothing of this; or of the untruthfulness of Wallace's representations, until after the property had all been delivered. It always dealt with the firm as composed of Stewart, Porter, and Wallace. Having no information to the contrary until after the bankruptcy of Stewart and Porter, and the receipt of the proceeds of its own property fraudulently procured from it, the corporation is not liable to the assignee of Stewart and Porter for such proceeds.

*Judgment affirmed.*