46 N.J. Super. 193 (1957)
134 A.2d 445
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
DEWITT BENTLEY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Considered August 12, 1957.
Decided August 21, 1957.
*198 Before Judges GOLDMANN, KNIGHT and WAESCHE.
Mr. Dewitt Bentley, defendant, pro se.
Mr. Frederick T. Law, Hudson County Prosecutor, and Mr. Frank J.V. Gimino, Assistant Prosecutor, attorneys for respondent.
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
Appeal from a judgment of conviction for grand larceny.
In March 1955 the Hudson County grand jury indicted Dewitt Bentley, alias William Fischer, and John Doe (a person whose true name was unknown), charging them with the crime of grand larceny in two counts, contrary to the provisions of N.J.S. 2A:119-2 and 2A:139-1. Defendant and his accomplice, who is still unidentified, were alleged to have swindled a woman out of $450 by means of an old confidence game, commonly known as the "pigeon drop." Bentley was apprehended at his home in Pittsburgh, Pennsylvania, on a fugitive warrant issued by the New Jersey authorities. He resisted extradition, and after a hearing upon a writ of habeas corpus was returned to Hudson County to await trial. He was arraigned June 15, 1956, pleaded not guilty and bail was fixed at $10,000. Unable to make bail, defendant was remanded to the county jail to await trial.
In reply to the State's demand under R.R. 3:5-9(a) for a bill of particulars in the event he intended to rely upon an alibi, defendant wrote a letter to the prosecutor listing the names and addresses of over 20 persons, residents *199 of Washington, D.C., upon whom he would rely to establish that defense. Trial was set for October 4, 1956. On that date the court ordered the matter postponed until February 1957 and assigned counsel to defend Bentley. Counsel promptly moved that the State furnish him with a bill of particulars setting forth the time of day and specific place of the alleged crime. R.R. 3:5-9(b). Such particulars were furnished November 5, 1956, the State advising that the crime took place about 10 A.M., September 10, 1954, at Clifton Place and Summit Avenue, Jersey City, N.J. Defendant's counsel then made formal reply to the State's demand for a bill of particulars, listing three residents of Washington, D.C., upon whom Bentley would rely to establish his alibi that he was in Washington at the time of the alleged crime: Wesley S. Williams, an attorney-at-law; Mrs. Eloise Wright, with whom he claimed he was residing on September 10, 1954, and Mr. Ellis Wright, whom he said he visited immediately after leaving attorney Williams' office on that date.
Counsel for defendant then moved for an order to take the oral deposition of Mr. Williams in Washington. The order was granted December 6, 1956 and the deposition taken. Mr. Williams testified that defendant had been with him in Washington from 9:15 A.M. to 1:30 P.M. on the date of the alleged crime. He claimed that defendant had come to consult him about a criminal case then pending against his wife and another woman and that he had given defendant a receipt, noted on the back of one of his professional cards, for payment on account of counsel fee.
After a two-day trial the jury found defendant guilty on the first count of the indictment, the second count having been dismissed. The County Court judge subsequently sentenced Bentley to State Prison for a five- to seven-year term.
Defendant was given leave to appeal in forma pauperis. He argues five points: (1) denial of his constitutional right to obtain witnesses in his defense, 1947 Const., Art. I, par. 10; (2) denial of his constitutional right to the effective *200 assistance of counsel, under the same paragraph; (3) loss of the court's jurisdiction because he was not present at the pretrial conference, "until the end"; (4) denial of his constitutional right to reasonable bail, 1947 Const., Art. I, par. 12; and (5) prejudicial error by the trial court in permitting the State to inquire about previous arrests where no conviction resulted.
We may observe, preliminary, that none of the points raised by defendant is supported by the inadequate record presented to this court. R.R. 1:6-1 and 1:7-1. His claim that as an indigent he was denied a stenographic transcript is a half-truth, for he never applied to the Appellate Division for one, although the County Court judge, in denying his petition for such a transcript, informed him of his right to do so, referring defendant to N.J.S. 2A:152-17 (L. 1956, c. 134):
"* * * Where such person [convicted of any crime] appeals to the Appellate Division of the Superior Court and copies of the transcript of the proceedings in the trial court are needed therefor he may make a similar application [for such copy of the transcript of the record, testimony and proceedings at the trial as may be necessary] to such court which, being satisfied of the facts stated and the sufficiency thereof, may certify the expense thereof to the county treasurer who shall thereupon pay such expense."
An appellate tribunal cannot consider and determine the substantiality and merit of a ground of appeal upon purely suppositions or unauthenticated premises. State v. Wilkerson, 38 N.J. Super. 166, 168 (App. Div. 1955). The court is bound in its consideration of an appeal to what appears of record or to matters stipulated by counsel. State v. Bogen, 13 N.J. 137, 144 (1953). It is the obligation of an appellant to supply a transcript, and he may not rely upon the State to do so. The rules make no exception in favor of an indigent appellant. State v. McFadden, 32 N.J. Super. 258, 260 (App. Div. 1954). N.J.S. 2A:152-17, quoted above, is available to indigent defendants in criminal causes in a proper case.
The obvious inadequacy of the record would dictate dismissal of the appeal. However, we will briefly consider *201 the several points raised by defendant, in the order in which they have been set out above.
There is nothing to substantiate defendant's contention that he was denied his constitutional right to have witnesses in his defense. Originally, in his personal letter to the prosecutor, he set out the names of some 20 persons upon whom he would rely to establish his September 10, 1954 alibi, but after assigned counsel had consulted with the prisoner the formal answer to the demand for a bill of particulars listed only three names. (These had also been listed in defendant's letter.) It is to be assumed that counsel knew exactly what he was about when he limited the formal answer to these three names only. Had defendant desired to have the testimony of other alibi witnesses it was his responsibility to request the court, personally or through counsel, to have subpoenas issued in his behalf to obtain their attendance at the trial, or to have an order for their depositions entered.
We note that defendant had months to prepare his defense. Assigned counsel was available to him to obtain such witnesses or depositions as might be required. Bentley was not without previous experience in criminal matters as we shall note below. We discern no deprivation of his constitutional right to obtain witnesses in his favor. Cf. State v. Petrucelli, 37 N.J. Super. 1, 8 (App. Div. 1955).
Defendant next claims he was denied the right of effective counsel. His complaints under this point are, in summary:
(1) Assigned counsel did not speak with other witnesses defendant had listed, when he was in Washington taking the Williams' deposition. We have merely defendant's word he asked his attorney to do so. There is nothing which obliges an attorney to interview any witness, whether requested by his client or not, unless his judgment indicates he should. When a defendant is represented at trial by an attorney, the latter has implied authority to make all necessary decisions on all matters incidental to the management of the case which affect only procedure or remedy as distinguished from *202 the cause of action itself, and the party is bound by such acts. State v. Mulvaney, 21 N.J. Super. 457, 462 (App. Div. 1952).
(2) Defendant alleges that a prior attorney had made an investigation in his behalf, that he had turned the results of this investigation over to assigned counsel, and that the latter failed to call its results to the attention of the court and jury. There is a total absence of supporting proof. Assuming there was such an investigation, we are not told just what materiality or relevance its findings had. Further, no authority is cited which holds that failure of an attorney to introduce evidence of this nature is reversible error.
(3) Defendant claims that jurors mingled with spectators during court recesses. Here again there is an absence of proof. To say that such alleged conduct was prejudicial, defendant must show there was communication between the bystanders and the jurors, and that the jurors were influenced thereby. Cf. State v. Cucuel, 31 N.J.L. 249, 262-263 (Sup. Ct. 1865). If the attorney, as defendant claims, refused to call the jurors' mingling with the public to the attention of the court "because he did not think they had talked to anyone," the attorney was justified in his refusal to carry out his client's request, assuming such request to have been made.
(4) Here defendant complains because his counsel refused to move that the trial judge disqualify himself because he had "sufficient knowledge" pertaining to his defense "which would enable him to form an opinion." We have been presented with no authority holding this to be a legal reason for disqualification. Cf. N.J.S. 2A:15-49.
Defendant quotes from State v. Leaks, 124 N.J.L. 261, 265 (E. & A. 1939), that the primary duty of a defense attorney is "to see to it that the lawful rights and privileges of the accused are not invaded, i.e., that he not be convicted except on legal evidence and by the due processes of law." So far as the record submitted shows, assigned counsel did his full duty to defendant, freely and without charge.
Assuming that counsel's professional performance was *203 something less than what defendant in retrospect now claims it should have been  and for this conclusion, as we have several times said, there is no factual support  we consider the occasion a proper one to make some general observations in light of the frequency with which prisoners lay their grievances upon the shoulders of assigned counsel in seeking to escape the penalty imposed by law.
As was recently observed by the N.J. State Bar Committee on Criminal Law in commenting on the role of public defender, the Constitution does not guarantee that counsel appointed for a defendant shall measure up to his notions of ability or competency. It is enough that the trial court appointed a qualified attorney to represent the accused, and that the attorney appeared, advised with and competently represented him. Counsel is not required to be infallible.
A failure of competent counsel in a criminal case to present certain evidence or to advance certain contentions, whether such non-action represent an error of judgment or mere inadvertence, does not constitute denial of due process of law, even though such failure result in a conviction which perhaps might have been avoided. The constitutional requirement is satisfied when the defendant has had the benefit of the advice and guidance of a reputable and competent attorney.
Assigned attorney is only one of the actors in the trial of a criminal cause. The best of counsel makes mistakes. Unless the purported representation by counsel was such as to make the trial a farce and a mockery of justice, mere allegations of incompetency or inefficiency of counsel will not ordinarily suffice as grounds to vitiate the trial. Dissatisfaction with the result obtained through the efforts of a prisoner's assigned or personal attorney is insufficient to invoke the protection of the constitutional requirement.
The very integrity of the bar of this State presupposes that every lawyer assigned to represent an indigent defendant will discharge his bounden duty. See Canons 5 *204 and 15, Canons of Professional Ethics. Cf. People v. Logan, 137 Cal. App.2d 331, 290 P.2d 11, 13 (D.C. App. 1955); United States ex rel. Hamby v. Ragen, 178 F.2d 379, 381 (7 Cir. 1949), certiorari denied 339 U.S. 905, 70 S.Ct. 515, 94 L.Ed. 1334 (1950).
Defendant next contends that the County Court lost jurisdiction because he was not present at a pretrial conference held pursuant to R.R. 3:5-3 "until the end when he was brought into court, and it was explained what had taken place." He claims that had he been present he would have insisted that all his witnesses be included in the order granting the taking of the Williams' deposition. (There was, of course, no such insistent by defendant when, as he says, he was brought in at the close of the conference and told what had happened.) Nowhere in the record is there any reference to this alleged pretrial conference. In fact, there is nothing to indicate that such a conference ever took place. Defendant apparently is referring to the argument on his motion to take depositions.
In any event, defendant's presence is not mandatory at a pretrial conference. Originally Rule 2:10-2 (now R.R. 3:5-4) made it mandatory that the defendant be in attendance at the pretrial conference, but that rule was amended to provide that the defendant was required to be present only at every stage of the trial and at the sentencing. R.R. 3:5-4. The criminal pretrial procedure rule, R.R. 3:5-3, merely provides that a defendant "shall have the right to be present" at the pretrial conference. There is no indication that Bentley attempted to exercise that right. In general, the presence of an accused is not necessary at preliminary or formal proceedings or motions which do not affect his guilt or innocence. 23 C.J.S., Criminal Law, § 974b, p. 307 (1940).
Defendant's fourth point is that he was held in excessive bail and thus deprived of his constitutional rights under 1947 Const., Art. I, par. 12. This is not a ground for appeal from conviction. As this court said in State v. Petrucelli, above, 37 N.J. Super. 1, 6 (App. Div. *205 1955), the amount of bail is left to sound judicial discretion, depending upon the nature and circumstances of each case. "In addition to the nature of the crime charged, the court has the right and duty to consider the quality of the defendant and such surrounding circumstances as may be necessary, including his previous criminal record." And see 8 C.J.S., Bail, § 49, p. 98 and notes 43 and 44 (1938); 6 Am. Jur., Bail, §§ 84, 85 and 90, pp. 96, 97 (1950). On the question of what constitutes excessive bail, see Beck and Labastille, "Security of Person  Excessive Bail" (in American History Committee, The New Jersey Citizen  Rights and Responsibilities (1954), pp. 117-124); Annotation, 96 L.Ed. 14 (1952).
The State has included in its supplemental appendix excerpts of the transcript setting out defendant's testimony on cross-examination as to his previous criminal record. The nature of the crime charged and defendant's extended previous criminal record, which included conviction of a crime similar to the one made the subject of this appeal  the "bunco game," larceny by trick and device  justified the amount of bail fixed. We are informed that defendant's criminal career began in 1919 and covered 11 states; that he was arrested as many as 34 times, resulting in six convictions. These convictions, admitted by defendant, included three for larceny, one for "bunco game," which is also larceny, one for false pretense, and one for burglary.
Finally, defendant argues that the trial court erred in permitting the State to inquire about previous arrests where no conviction resulted. The record flatly contradicts his claim. No such inquiries were made. The State was meticulous in limiting its cross-examination of defendant to only prior convictions and sentences. The trial court properly permitted, on cross-examination of defendant as to his conviction of crimes, such facts as would have been brought out if the convictions had been proved by the production of the record thereof. State v. Merra, 103 N.J.L. 361, 365 (E. & A. 1927); State v. Kobylarz, 44 N.J. Super. 250, 254-255 (App. Div. 1957).
Affirmed.