65 N.J. Super. 421 (1961)
168 A.2d 49
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JAMES BUFFA, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Decided February 9, 1961.
*422 Before Judges GOLDMANN, FOLEY and HALPERN.
GOLDMANN, S.J.A.D.
Defendant applied to the County Court for correction of allegedly illegal sentences. The application was denied, and he now seeks leave to appeal as an indigent.

*423 I.
Defendant and one Carey were tried and found guilty of armed robbery, in violation of N.J.S. 2A:141-1 and 2A:151-5. On May 31, 1957 they were sentenced to serve a prison term of 7-10 years on the robbery charge (N.J.S. 2A:141-1) and a consecutive term of 3-4 years for being armed (N.J.S. 2A:151-5). Defendant and Carey appealed, leave being granted to proceed in forma pauperis on the basis of petitions setting out some 18 claims of error. Appellants were in regular course provided with transcripts exceeding 500 pages, at county expense. The appeal briefs thoroughly explored every ground that Buffa and Carey considered available to them at the time.
The appeal was heard by this part and decided adversely to appellants on July 3, 1958. State v. Buffa and Carey, 51 N.J. Super. 218. On appeal the Supreme Court, per curiam, affirmed essentially for the reasons stated by us. 31 N.J. 378 (January 25, 1960). Certiorari was denied by the United States Supreme Court on December 5, 1960, 81 S.Ct. 279, 5 L.Ed.2d 228.
Defendant's next step was his application for correction of illegal sentences, the denial of which he seeks to review. His petition for leave to appeal as an indigent sets out four grounds: (1) he was "without competent counsel for his defense and/or without the aid and advice of competent counsel in his defense, at the time of his trial" by the County Court in May 1957; (2) he was "without the aid and advice of counsel for his defense, at the time of his sentencing" on May 31, 1957; (3) the indictment was fatally defective, and therefore (4) the sentences imposed were basically illegal. In light of defendant's apparently exhaustive listing of claimed grounds for reversal of his conviction, set out in his prior application for leave to appeal in forma pauperis from his conviction and in his brief on the appeal, the grounds now asserted for correction of sentence are clearly an afterthought.
*424 The present application is typical of many we have received, where grounds that might have and should have been asserted on the main appeal were apparently reserved for use on subsequent applications  released one by one as the whim of the prisoner and his intra-mural advisors dictated. Each application requires careful review by the court, particularly since many of them are incomplete or so general as to be uninformative. Then follows leave to appeal granted, a free transcript and, in most cases, assignment of counsel. Not only is the county put to extra expense, the time and efforts of assigned counsel and the prosecutor's office consumed, but the court calendar taken up with appeals which, with increasing frequency, are completely without merit.
The courts are always open, as they should be, to defendants who have been dealt with unfairly. We are and must remain sensitive to claims that have any show of merit. But we should not be blind to claims that have no substance whatever, conceived in prison leisure, and  as is quite evident to us from a consideration of more than 100 applications in the recent past  composed with the help of what appears to be a small corps of "prison lawyers," who have law books, the latest decisions of our appellate courts and other courts, typewriters, legal paper, and all that is necessary for producing a constant flow of applications, supporting papers and briefs.
Defendant's claim of having been without the help of competent counsel at the time of trial and sentence is one that by now has a rubber-stamp familiarity. During the past two years it has appeared with monotonous regularity in application after application. As in this case, such a claim, baldly stated, sets out nothing more than a mere conclusion. Defendant makes no attempt at even the slightest show of particulars in support of his general charge. A prisoner who makes such a claim when applying for leave to appeal as an indigent must, at the very least, indicate in just what manner, in what instance or instances, counsel failed him. Without this, the claim is completely unpersuasive; *425 it amounts to nothing more than a gratuitous defamation of the defense attorney's reputation and an imposition on the administration of criminal justice.
We are not without knowledge of the able representation which defendant received at the time of his trial and sentence. He was defended by counsel of his own choice  and so was his co-defendant, Carey. Our reading of the transcript in State v. Buffa, 51 N.J. Super. 218 (App. Div. 1958), leaves us without the slightest doubt that counsel gave defendant every aid and protection possible.
What we had to say about assigned counsel in State v. Bentley, 46 N.J. Super. 193 (1957), is of equal pertinence here. The Constitution does not guarantee that counsel for a defendant shall measure up to his notions of ability or competency. Counsel is not required to be infallible.
"A failure of competent counsel in a criminal case to present certain evidence or to advance certain contentions, whether such non-action represent an error of judgment or mere inadvertence, does not constitute denial of due process of law, even though such failure result in a conviction which perhaps might have been avoided. The constitutional requirement is satisfied when the defendant has had the benefit of the advice and guidance of a reputable and competent attorney.
Assigned attorney is only one of the actors in the trial of a criminal cause. The best of counsel makes mistakes. Unless the purported representation by counsel was such as to make the trial a farce and a mockery of justice, mere allegations of incompetency or inefficiency of counsel will not ordinarily suffice as grounds to vitiate the trial. Dissatisfaction with the result obtained through the efforts of a prisoner's assigned or personal attorney is insufficient to invoke the protection of the constitutional requirement.
The very integrity of the bar of this State presupposes that every lawyer assigned to represent an indigent defendant will discharge his bounden duty. See Canons 5 and 15, Canons of Professional Ethics. Cf. People v. Logan, 137 Cal. App.2d 331, 290 P.2d 11, 13 (D.C. App. 1955); United States ex rel. Hamby v. Ragen, 178 F.2d 379, 381 (7 Cir. 1949), certiorari denied 339 U.S. 905, 70 S.Ct. 515, 94 L.Ed. 1334 (1950)." (46 N.J. Super., at pages 203-204)
Cf. State v. Rinaldi, 58 N.J. Super. 209, 214 (App. Div. 1959).
*426 Defendant in State v. Wolak, 26 N.J. 464 (1958), claimed that assigned counsel had inadequately defended him. Our Supreme Court found no justification whatever for the charge, and added:
"* * * We deplore the tendency  which appears entirely too often in the claims of prisoners after conviction  to criticize members of the bar who have labored earnestly and well in their behalf and in most cases without compensation. State v. Bentley, 46 N.J. Super. 193 (App. Div. 1957)." (26 N.J., at pages 483-484)
We hold defendant's unsupported claim that he was without competent counsel for his defense at the time of trial and at sentence insufficient to support his present application. He is, in effect, indulging in a second-guessing of his trial  almost four years after the fact.

II.
We find the claim that the armed robbery indictment was fatally defective and the sentences imposed therefore illegal, worthless on its face. If defendant's present and past applications to this court are any criterion, he or his prison advisors are surely not without knowledge as to the present state of the law on the contention now made.
The indictment charged Buffa and Carey with armed robbery of the Continental Baking Company office in Paterson on October 26, 1956, "contrary to provisions of 2A:141-1-N.J.S. and 2A:151-5-N.J.S." They pleaded not guilty. The trial and proceedings that followed centered upon establishing the charge that they committed robbery while armed, and imposing an appropriate punishment for doing so. Without question, each defendant knew he was being tried for armed robbery. They were found guilty of that charge and sentenced on that charge.
The present claim that the indictment was defective is based on the contention that there was an illegal joinder or consolidation of two separate and distinct statutory violations *427 within the one count of the indictment, namely, robbery in violation of N.J.S. 2A:141-1, and being an armed criminal in violation of N.J.S. 2A:151-5.
As this court had occasion to say again only a few weeks ago, it is well settled that an indictment like the one here under consideration does not allege two separate crimes, but a single crime (robbery, N.J.S. 2A:141-1) under circumstances which permit greater punishment for that crime (N.J.S. 2A:151-5). See State v. Cianci, 18 N.J. 191 (1955); State v. Stephenson, 41 N.J. Super. 315 (App. Div. 1956); State v. LaVera, 35 N.J. Super. 256 (App. Div. 1955), certiorari denied 350 U.S. 853, 76 S.Ct. 95, 100 L.Ed. 758 (1955); State v. Tumbiolo, 28 N.J. Super. 231 (App. Div. 1953), certification denied 14 N.J. 495 (1954), certiorari denied 347 U.S. 948, 74 S.Ct. 647, 98 L.Ed. 1095 (1954); State v. Burns, 4 N.J. Super. 34 (App. Div. 1949).
The sentences imposed by the court, being well within the maxima allowed under the respective two statutes, were proper. Any suggestion that defendant has been subjected to double jeopardy is without validity. He was punished for only one crime, robbery, for which he received an enhanced punishment because he used a revolver. That a statutory provision for the imposition of a greater sentence because of particular circumstances  in this case, being armed while committing robbery  is constitutionally proper, is too well settled to require discussion.
The application is denied.