75 N.J. Super. 207 (1962)
182 A.2d 591
THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
CLANTON BENNETT, OTHERWISE KNOWN AS CAESAR BENNETT, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued June 4, 1962.
Decided June 22, 1962.
*208 Before Judges PRICE, SULLIVAN and LEWIS.
Mr. Samuel A. Wiener, assigned counsel, argued the cause for appellant.
Mr. Archibald Kreiger, Assistant Prosecutor, argued the cause for respondent (Mr. John G. Thevos, Passaic County Prosecutor, attorney; Mr. Kreiger, of counsel).
The opinion of the court was delivered by LEWIS, J.A.D.
Defendant Clanton Bennett, otherwise known as Caesar Bennett, appeals from a judgment of conviction entered in the Passaic County Court, Law Division, pursuant to a jury verdict of armed robbery. (N.J.S. 2A:141-1 and N.J.S. 2A:151-5). The sentences imposed were three to four years in State Prison for the offense of robbery and an additional term of one year for being armed when the crime was committed.
On February 9, 1956 the Passaic office of the Beneficial Finance Company of Newark was held up and robbed of $2,009 by a man brandishing a gun. Three employees of the company were eyewitnesses: James J. McCormack, manager; Patricia Hohtanz, a cashier; and Alice M. Gernat, *209 another cashier. At the trial (September 15, 1960) each of said witnesses identified the defendant as the robber. The two cashiers had previously recognized Bennett in a police lineup and from photographs of the culprit. Bennett testified on his own behalf, denied guilt and offered a defensive alibi, claiming that at the time of the robbery he was in Herman's Bar and Grill in Passaic. Herman Levine, proprietor, was unable to recall the specific day in February 1956 when defendant patronized his bar, but did remember that the defendant had left prior to 3 P.M., the time when the robbery in question had occurred.
The substance of defendant's contentions on appeal is that (1) he was denied a speedy trial, (2) assigned counsel was incompetent, (3) his confession was involuntary and thus inadmissible, (4) the trial court erred in admitting evidence relating to prior identifications, and (5) the additional one-year sentence was illegal.
Points one and two are not supported by the record and need not here be considered further. Upon analyzing the evidence and applicable law, the baselessness of point three becomes apparent. Bennett had attempted an armed robbery of the Family Finance Company in New York. In the course of perpetrating that crime he was captured by a would-be victim and taken to the New York police headquarters. During the course of questioning it was developed that a warrant for Bennett's arrest was outstanding in Passaic County, New Jersey. The police of that county were immediately notified. Defendant claimed that after he confessed to the New York crime the police had beaten, threatened and brutally treated him until he agreed to "give a statement to the Passaic police when they came." Upon the arrival of Detective Zislin and Officer Gelman from Passaic, who were accompanied by witnesses Hohtanz and Gernat, the defendant was identified by the witnesses as the robber of the Beneficial Finance Company on February 9, 1956. He then acknowledged committing the robbery in Passaic and signed a confession. At the same meeting, *210 Hohtanz and Gernat likewise executed respective statements, which were witnessed by the defendant, identifying him with the New Jersey crime. Defendant admitted that approximately one hour had intervened between the alleged intimidation and abuse by the New York authorities and the time when he gave his written statement to Zislin and Gelman. He declared that no threats or force were used upon him by any of the police authorities from Passaic. It is significant that defendant made no complaints to the New Jersey representatives about the treatment he supposedly received at the hands of the New York police. Even if they did use improper methods, that in itself does not lead to the conclusion that the confession he made to the Passaic officers (an hour later) was not voluntary. The evidence does not indicate any continuing coercive practice; in fact, the New York police were not even present when defendant made the confessional statement in question. See Stroble v. California, 343 U.S. 181, 72 S.Ct. 599, 96 L.Ed. 872 (1952), rehearing denied 343 U.S. 952, 72 S.Ct. 1039, 96 L.Ed. 1353 (1952); Lyons v. Oklahoma, 322 U.S. 596, 64 S.Ct. 1208, 88 L.Ed. 1481 (1944); Annotation, 1 L.Ed.2d 1735, 1750-52 (1957). The credible evidence in the record does not reveal conduct fundamentally unfair with respect to the defendant's confession of the New Jersey robbery, and the question of voluntariness was properly submitted to the jury with an appropriate charge as to the applicable law. We find adequate conformity with the safeguarding principles enunciated in State v. Smith, 32 N.J. 501 (1960), cert. denied 364 U.S. 936, 81 S.Ct. 383, 5 L.Ed.2d 367 (1961); State v. Johnson, 31 N.J. 489 (1960); and State v. Fauntleroy, 36 N.J. 379 (1962).
Defendant argues (point four) that it was prejudicial error for the court to admit evidence by the State's witnesses regarding prior identifications of the defendant. The jury was properly instructed to disregard completely the prior identification testimony of Detective Zislin. No such instructions, however, were given concerning the evidence *211 proffered by the two female witnesses who, in addition to identifying defendant in open court, testified respecting their identification of him on April 26, 1956 from photographs and in a police lineup. During the course of the trial it was conceded by defense counsel that such evidence "shall remain in the record." It is now argued that the prosecution should not have been permitted to bolster the courtroom identification with improper or inadmissible extrajudicial evidence, and that the defendant was so prejudiced thereby as to constitute "plain error." Statements identifying an accused on a former occasion are not necessarily inadmissible. Although the decisional law of this State has not squarely dealt with this subject, our Supreme Court in State v. Buffa, 31 N.J. 378, 379 (1960), cert. denied 364 U.S. 916, 81 S.Ct. 279, 5 L.Ed.2d 228 (1960), in referring to the opinion of this court reported in 51 N.J. Super. 218 (1958), said:
"The last paragraph of the opinion refers to the introduction by the State of testimony showing prior consistent, out of court identification of the defendants by the witness giving identification evidence at the trial. The court suggested that the present trend of judicial authority is to allow such proof and cited the pertinent cases. But it inferred that the New Jersey rule may be to the contrary, citing State v. Landeros, 20 N.J. 69, 72 (1955); State v. D'Ippolito, 22 N.J. 318, 322 (1956), and it held that, in any event, since such testimony was not objected to by experienced counsel and plain error did not appear, reversal was not justified. We agree that there is much persuasive force in the majority rule which sanctions admissibility of such proof when the person who made the earlier out of court identification appears as a witness at the trial of the case and identifies the defendants in court or indicates that he is unable to do so at that time. The state of the record, however, makes it unnecessary to decide the problem in this case and decision thereon is reserved."
Plain error did not appear in Buffa  a fortiori, it does not exist in the present case where counsel agreed to that portion of the record now in dispute and where the fact of identification was corroborated by the direct testimony of three eyewitnesses. Having reached this conclusion, it is *212 unnecessary that we here resolve the general issue of admissibility of extrajudicial identification. We note, however, that the facts in the case sub judice present a classic illustration of a situation where, in the search for truth based upon competent evidence, there may be impelling reasons for adhering to the majority rule that sanctions the admissibility of such evidence. The New Jersey trial was delayed until after the defendant had served a term of incarceration in New York for a crime there committed. The trial took place nearly four and a half years after the Passaic robbery. There was, however, prior identification, within three months after the crime, which had the characteristics of substantive proof of facts that would enable the jury to better weigh and determine the witnesses' testimony at the trial. The modern trend is to support the admission of such proofs. For a general discussion see 4 Wigmore, Evidence (3d ed. 1940), sec. 1130, p. 208; 2 Wharton, Criminal Evidence (12th ed. 1955), sec. 533, p. 380; Annotations, 70 A.L.R. 910, 140 A.L.R. 21, 176 and 71 A.L.R.2d 449; "Criminal Law  Evidence  Testimony of Extra-Judicial Identification," 36 Minn. L. Rev. 530 (1952); Committee Annotation 2D on Rule 63(1), Report of the Committee on the Revision of the Law of Evidence to the Supreme Court of New Jersey, p. 120 (1955).
Lastly, the legality of the additional one-year sentence is challenged. Defendant was not tried for two separate crimes. See State v. Buffa, 65 N.J. Super. 421, 427 (App. Div. 1961). The legislative provision for an additional punishment for armed criminals would be meaningless if the added sentence were to be served concurrently with the separate prison term that the court imposed for the crime of robbery. The statute, the sentencing language used by the court and the conviction record entered by the clerk are unmistakably clear. The sentences enjoined upon the defendant were valid and are to be served consecutively.
Affirmed.