**UNITED STATES of America ex rel. John Louis MERTZ, Appellant,**

v.

**STATE OF NEW JERSEY.**

**No. 17837.**

United States Court of Appeals, Third Circuit.

Submitted on Briefs Dec. 16, 1969.

Decided March 26, 1970.

---

John L. Mertz, pro se.

Abel Goldstein, Asst. Prosecutor, Jersey City, N. J. (James A. Tumulty, Jr., Prosecutor of Hudson County, Jersey City, N. J., on the brief), for appellee.

Before McLAUGHLIN, FREEDMAN and ADAMS, Circuit Judges.

OPINION OF THE COURT

FREEDMAN, Circuit Judge.

In this habeas corpus case petitioner attacks his state court conviction of armed robbery. His conviction was affirmed by the Appellate Division of the New Jersey Superior Court, and the Su-

preme Court of New Jersey denied a certification for appeal.

The district court denied the petition for habeas corpus on a review of the state record without holding an evidentiary hearing. Petitioner's brief elaborately argues that he was denied due process on a number of grounds which are without merit and require no discussion.[1] We address ourselves to the substantial claims.

## I. *The Police Photographs*

The state's evidence at the trial consisted primarily of the testimony of Nicoll Bunnell, the night auditor of the motel which was robbed at 5:00 a. m. on November 24, 1965. Later that morning, Bunnell identified petitioner in one police photograph, and later in the day identified him in another.

There was testimony by the police that Bunnell had seen the photographs in the Criminal Investigation Bureau of the Jersey City Police Department. The photographs made it evident that petitioner had at least been arrested and photographed by the police on two occasions prior to the present robbery. The front views of both photographs plainly show a large label on petitioner's person containing a number and date, and one contains the additional words "Police

Dept. Union City, N. J." One of the photographs is dated September 24, 1958, and the other December 24, 1964, seven years in one case and almost a year in the other prior to the present robbery.

The trial judge admitted the photographs in evidence over petitioner's objection after directing that the notations they bore on the reverse side should be masked. In his charge he instructed the jury to disregard the fact that they were police photographs and to consider them solely in relation to Bunnell's identification testimony, without regard to any notations on the front and the fact that the reverse sides were masked.[2]

The state was not led to introduce the photographs in order to rebut a challenge by the defense on cross-examination to the identification, a situation which might justify their explanatory use.[3] Here, the photographs were introduced by the prosecution in its direct examination of Bunnell in the course of his testimony identifying petitioner. Were this a case on direct appeal from a federal conviction we would be required to balance the probative value of the photographs on direct examination against the possibility of prejudice to the petitioner in order to determine whether their admission constituted reversible error.[4]

1. These are claims of denial of due process because of the identification procedures, the trial judge's refusal to admit into evidence petitioner's statement to the police asserting his innocence, the trial judge's refusal to allow petitioner's counsel full use of certain police reports, the state's failure to supply him the names of its witnesses in advance of trial, and the trial judge's refusal of certain requests for charge.

2. The cautionary instruction reads:
   "Now, the State offered two photographs of the defendant from which the alleged victim, Mr. Bunnell, testified he identified the defendant as one of the holdup men. These photographs were marked S–1 and S–2 in evidence and you will take them with you into the jury room and have the opportunity to view them.

   "All writings on the rear of the photographs have been masked from view. I caution you that you are to consider these exhibits of photographs merely for the purpose of considering the basis of Mr. Bunnell's testimony relevant to his original identification of the defendant and not for any other purpose.
   "I further caution you that you are not to draw any inferences from the markings on the front of photographs, the maskings of the rear, on the rear of the photographs or the fact that these photographs were in the possession of the police."

3. See United States v. Frascone, 299 F.2d 824, 828–829 (2 Cir.), cert. denied 370 U.S. 910, 82 S.Ct. 1257, 8 L.Ed.2d 404 (1962) ; Tucker v. United States, 214 F.2d 713, 715 (9 Cir. 1954).

4. See United States v. Robinson, 406 F.2d 64 (7 Cir.), cert. denied 395 U.S. 926,

■ It is not our function, however, to decide whether there was error in the admission of the photographic evidence. Nor are we called upon to decide the related problem of the effectiveness of cautionary instructions on this subject.[5] This is not a review on direct appeal but an application for habeas corpus, and the question before us is whether the admission of the photographs with a cautionary instruction to the jury, as approved by the New Jersey courts,[6] constituted a denial of due process.

The Supreme Court has made it clear in Spencer v. Texas, 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967), that the states have a broad area of choice regarding the rules of evidence they will apply in their criminal proceedings. There the Court upheld the decision which some states have made in dealing with recidivists that the possibility of prejudice occasioned by the admission of prior convictions before there is a determination of guilt is outweighed by their utility in establishing the elements which are necessary for the imposition of a penalty for recidivism.[7]

■ In view of the broad discretion of the states which *Spencer* acknowledged,[8] we cannot say that the admission of the police photographs, masked as they were, and for the limited purpose of consideration with the victim's identification testimony, coupled with cautionary instructions to the jury, amounted to error which rises to constitutional dimensions.

## II. *Petitioner's Unemployment*

Petitioner himself did not take the stand, but his wife, Lois Jean Mertz, testified on his behalf to an alibi. Her evidence was that they had been visiting night clubs on the evening of November 23 and had come home early in the morning when the last bar closed at 3:00 o'clock on November 24. She testified that petitioner was at home in bed at the time of the robbery. Petitioner's sister-in-law, Donna Garris, confirmed the alibi, testifying that she had arrived at the house during the evening to act as a baby sitter and stayed overnight, and that petitioner and his wife returned home and went to bed at 3:30 a. m.,

89 S.Ct. 1783, 23 L.Ed.2d 243 (1969); United States v. Reed, 376 F.2d 226, 228–229 (7 Cir. 1967); Barnes v. United States, 124 U.S.App.D.C. 318, 365 F.2d 509, 510–512 (1966); United States v. Harman, 349 F.2d 316, 319–322 (4 Cir. 1965); Dirring v. United States, 328 F.2d 512, 514–515 (1 Cir.), cert. denied 377 U.S. 1003, 84 S.Ct. 1939, 12 L.Ed. 2d 1052 (1964); United States v. Amorosa, 167 F.2d 596, 598–599 (3 Cir. 1948). See also United States v. Boston, 330 F.2d 937, 940 (2 Cir.), cert. denied 377 U.S. 1004, 84 S.Ct. 1940, 12 L. Ed.2d 1053 (1964). See generally 1 Wigmore, Evidence §§ 193–94, 215–17 (3d ed. 1940); 3 Id. §§ 786, 792; Annotation, Admissibility, and Prejudicial Effect of Admission, of "Mugshot," "Rogues' Gallery" Photograph, or Photograph Taken in Prison, of Defendant in Criminal Trial, 30 A.L.R.3d 908 (1970).

5. Compare Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), with Spencer v. Texas, 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967).

6. State v. Dancyger, 29 N.J. 76, 90–91, 148 A.2d 155, 162–163, cert. denied 360 U.S.

903, 79 S.Ct. 1286, 3 L.Ed.2d 1255 (1959); State v. O'Leary, 25 N.J. 104, 115, 135 A.2d 321, 327 (1957). Cf. State v. Rombolo, 89 N.J.L. 565, 569, 99 A. 434, 436 (Ct.Err. & App.1916) (reversible error where back of photograph showed prior criminal offense and violation of parole).

7. The dissenting opinion of Chief Justice Warren, joined in by Mr. Justice Fortas, did not dispute the right of the state to show prior convictions where the evidence goes to the issue of guilt rather than sentencing and is not merely an effort to show a general criminal disposition (pp. 577–578, 87 S.Ct. 648). This view also was approved in the dissenting opinion of Mr. Justice Brennan, joined in by Mr. Justice Douglas (p. 587, 87 S.Ct. 648).

8. See Rundle v. Johnson, 386 U.S. 14, 87 S.Ct. 847, 17 L.Ed.2d 695 (1967); United States ex rel. Bolish v. Maroney, 409 F.2d 1404 (3 Cir.), cert. denied 396 U.S. 893, 90 S.Ct. 187, 24 L.Ed.2d 168 (1969). See also Commonwealth v. Chapasco, 436 Pa. 143, 258 A.2d 638 (1969).

where they were when she left at 7:00 a. m.

At the conclusion of the state's cross-examination of petitioner's wife, the trial judge, sua sponte, questioned her on what her husband did for a living, whether he was out of work on the day of the robbery, how long he had been out of work, and where he obtained funds, presumably with which to visit night clubs. This questioning elicited from the witness the information that her husband had been out of work from March to November, 1965, except for some part-time work at a barber shop, and that he had begun drawing unemployment compensation in March.[9] All this testimony was secured over the objection of petitioner's counsel.

Later, in the course of his charge, after summarizing to the jury the wife's testimony relating to the alibi, the trial judge said, without any elaboration: "She admitted that her husband hasn't worked since March of 1965, and was still unemployed on November 24, 1965 [the date of the robbery]." No explanation was given to the jury why the trial judge found it desirable to call their attention to petitioner's unemployment from March until the date of the robbery. When objection was made to this part of the charge on the ground that neither the state nor the petitioner had brought it out in their examination of the witness, the trial judge responded that he had merely "cleared up" the testimony in questioning the witness.

It is fundamental to our conception of a fair trial that equality of treatment must be afforded to all without regard to differences in social status or economic condition. In a society which cherishes the ideal of equal justice for all and seeks to accord the equal protection of the laws to all those who are accused of crime, it would be difficult to accept any other view.

Nevertheless, the special nature of the crime charged may justify the use of evidence of financial embarrassment in order to show the accused's knowledge and motive, as where one is charged with embezzlement or similar financial misconduct.[10] And, of course, evidence of lack of funds prior to the time of the crime charged is admissible if it is joined with proof of the sudden possession of wealth immediately afterward.[11] Even in the ordinary case, however, where there is no contrast between poverty and sudden possession of wealth, the courts have not spoken decisively in

9. "THE COURT: What does your husband do for a living?
"THE WITNESS: The last job he had was working with John J. Cross on a campaign truck.
"THE COURT: Was he out of work on the day this happened?
"THE WITNESS: The guy he was working for told him he was going to get him a steady truck job.
"THE COURT: Was he out of work on the day this happened?
"THE WITNESS: Yes.
"THE COURT: Where did you get the money?
"THE WITNESS: He had the money. We had about $15.
"THE COURT: How long was he out of work?
"THE WITNESS: I don't know.
"MR. MURPHY: Your Honor, I don't believe that we went into this either in direct or cross.
"THE COURT: You may note your objection. How long was he out of work?
"THE WITNESS: He started drawing unemployment I think about March.
"THE COURT: March to November he had not worked?
"THE WITNESS: No; oh, he worked part-time, the barber's.
"THE COURT: That's all."

10. See Ray v. United States, 114 F.2d 508, 511–512 (8 Cir.), cert. denied 311 U.S. 709, 61 S.Ct. 318, 85 L.Ed. 461 (1940) (embezzlement); United States v. Houlihan, 332 F.2d 8, 14–15 (2 Cir.), cert. denied 379 U.S. 828, 85 S.Ct. 56, 13 L. Ed.2d 37 (1964) (securities fraud). See also Dimmick v. United States, 135 F. 257, 266 (9 Cir. 1905) (theft by employee of the mint).

11. See, e. g., United States v. McKenzie, 414 F.2d 808, 809 (3 Cir. 1969). See also 1 Wigmore, Evidence § 32 (Ex. 3) (3d ed. 1940).

weighing the probative value of motive arising from poverty against the prejudice to the defendant.[12]

Wigmore thus states what he deems to be the appropriate rule:

> "The *lack of money* by A might be relevant enough to show the probability of A's desiring to *commit* a *crime* in order to obtain money. But the practical result of such a doctrine would be to put a poor person under so much unfair suspicion and at such a relative disadvantage that for reasons of fairness this argument has seldom been countenanced as evidence of the graver crimes, particularly of violence. * * *" 2 Wigmore, Evidence § 392, p. 341 (3d ed. 1940).

For our purpose, it is enough to say that New Jersey has followed the rule laid down by Wigmore in the recent case of State v. Mathis, 47 N.J. 455, 469–472, 221 A.2d 529, 536–538 (1966). In that case a conviction of murder was reversed because the prosecutor had questioned the defendant, charged with murder during an attempted robbery, as to how much money he had and when he had last worked, and had also called two witnesses to prove that defendant did not work where he claimed he did. The state alleged that its purpose in doing this was to attack defendant's credibility. The Supreme Court of New Jersey held that the evidence which the prosecutor had pursued was at the most collateral to the issues involved and was not supportable either as germane to the issues or as an attack on defendant's credibility. Chief Justice Weintraub, speaking for a unanimous court, said:

> "But what emerged was something more than a mere trial of something extraneous. The point the State in truth made by its rebuttal witnesses was that defendant lied when he said he worked for his father, and hence he did not earn money that way, and being otherwise essentially unemployed, he must have been destitute and therefore he likely would rob.
> * * *

> "Undoubtedly a lack of money is logically connected with a crime involving financial gain. The trouble is that it would prove too much against too many. [Quoting 2 Wigmore, Evidence § 392.] * * * The State * * * projected before the jury the forbidden theme that defendant had no apparent means of income and hence was likely to commit a crime for dollar gain. This was improper and injurious." 47 N.J. at 471–472, 221 A.2d at 537–538.

*Mathis* has been cited with approval in New Jersey.[13]

Here, the evidence of petitioner's unemployment and lack of funds was produced in circumstances that were especially prejudicial. It came to the jury through questioning by the court at the conclusion of the prosecutor's cross-examination of petitioner's wife. The court's intervention must have carried with it the implication that it was an important feature of the case. This was magnified when the judge later called attention to it in his charge. Moreover, it dealt with the status of an accused who was already shown to have been the subject of police photographs and thus to have had earlier encounters with the police. The addition of unemployment to evidence of prior criminal conduct necessarily must have been a magnification of the prejudice which would result from unemployment alone.

---

12. See, e. g., Davis v. United States, 133 U.S.App.D.C. 167, 409 F.2d 453, 457–458 (1969); United States v. Caci, 401 F.2d 664, 670 (2 Cir. 1968), cert. denied 394 U.S. 917, 89 S.Ct. 1180, 22 L.Ed.2d 450 (1969), reversed on other grounds sub nom. Natarelli v. United States in Giordano v. United States, 394 U.S. 310, 89 S.Ct. 1164, 22 L.Ed.2d 297 (1969); United States v. Mullings, 364 F.2d 173, 175–176 (2 Cir. 1966).

13. State v. Dent, 51 N.J. 428, 443, 241 A.2d 833, 841 (1968); State v. Copeland, 94 N.J.Super. 196, 200–203, 227 A.2d 523, 525–526 (1967). Cf. State v. Rogers, 19 N.J. 218, 228–229, 116 A.2d 37, 41–42 (1955).

Were we now to determine the constitutional issue presented by this problem, it would be necessary for us to decide, in addition to the due process question, whether the State of New Jersey arbitrarily refused to apply its *Mathis* rule and thus denied to petitioner his right under the Fourteenth Amendment to the equal protection of the laws. It is at once noticeable that the New Jersey appellate courts made no mention of the *Mathis* problem, although *Mathis* had been decided a short time before petitioner's trial began.[14] There is some indication in the briefs that the question was presented to the appellate courts of New Jersey, but we do not know whether this was so, nor do we know whether it was pressed by counsel who appeared for petitioner in the argument in the Superior Court.

In these circumstances, we believe the conclusion is appropriate that there was a failure or insufficiency of presentation of the claim to the New Jersey appellate courts, rather than a disregard by them of their own doctrine in a case to which it was applicable. It is therefore appropriate for us to withhold decision until petitioner renews his contention directly in the state courts, if he desires to pursue it. There the issue may be fully considered, both on federal constitutional grounds or on any state grounds, together with any other relevant elements present in the surrounding circumstances of the case.

### III. *Double Jeopardy*

Petitioner claims that his guarantee under the Fifth Amendment against being "twice put in jeopardy of life or limb" was violated.[15] He bases this contention on his consecutive sentences of 5 to 7 years for robbery, under N.J.S. 2A:141-1, N.J.S.A.,[16] and 2 to 3 years for being armed, under N.J.S. 2A:151-5, N.J.S.A.[17]

At the time of petitioner's conviction the double jeopardy provision of the Fifth Amendment did not apply to the states and the due process clause of the Fourteenth Amendment operated only where there was a denial of fundamental fairness. Palko v. Connecticut, 302 U.S. 319, 58 S.Ct. 149, 82 L.Ed 288 (1937). After the affirmance of petitioner's conviction by the New Jersey appellate courts and the denial by the district court of the present petition for habeas corpus, *Palko* was expressly overruled in

14. Petitioner's trial began on November 7, 1966, four months after the decision of the Supreme Court of New Jersey in *Mathis*. His conviction was affirmed by the Appellate Division of the Superior Court on February 19, 1968, almost two years after the decision in *Mathis*, and the Supreme Court of New Jersey denied a certification of appeal on May 14, 1968.

15. The Fifth Amendment declares: " * * * nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb * * *."

16. "Robbery; penalty
    "Any person who forcibly takes from the person of another, money or personal goods and chattels, of any value whatever, by violence or putting him in fear, is guilty of a high misdemeanor and shall be punished by a fine of not more than $5,000, or by imprisonment for not more than 15 years, or both."

17. "Additional sentence for armed criminals

"Any person who commits or attempts to commit an assault, robbery, larceny, burglary, [etc.] * * * when armed with or having in his possession any firearm, whether or not capable of being discharged or dangerous instrument of any kind, usually known as a blackjack, [etc.] * * * shall, in addition to the punishment provided for the crime, be punished on a first conviction by imprisonment for not less than one nor more than 10 years; upon a second conviction by imprisonment for not less than 3 nor more than 15 years; upon a third conviction by imprisonment for not less than 5 nor more than 20 years; and upon a fourth or subsequent conviction, by imprisonment for not less than 10 years nor more than for life, in the discretion of the court. No such additional punishment shall be imposed unless the indictment shall have averred that the person was armed with or had in his possession any such instrument and conviction was had thereon." [As amended.]

Benton v. Maryland, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), which held the double jeopardy clause of the Fifth Amendment applicable to the states by incorporation into the Fourteenth Amendment.

The preliminary question, therefore, is whether *Benton* is to be given retrospective application to petitioner's conviction. Two circuit courts of appeal have held *Benton* to be retrospective,[18] and the question is now awaiting decision by the Supreme Court.[19]

If we assume that *Benton* is to be applied retrospectively, petitioner's claim must fail because he was not placed in double jeopardy. This is not a case of two separate crimes, one of which merges into the other, and which therefore cannot be twice punished because the result would be a double punishment for a single offense.[20] The courts of New Jersey have construed the state's legislative purpose in these statutes to be the creation of a single crime under circumstances which permit additional punishment.[21] Such being the legislative purpose as determined by the courts of New Jersey, cases like Prince v. United States, 352 U.S. 322, 77 S.Ct. 403, 1 L.Ed.2d 370 (1957), construing a federal statute as intending increasing grades of a common offense to swallow up the subordinate ones, are inapplicable.[22]

The purpose which the New Jersey courts have found reflected in the statute expresses a legitimate state interest to provide an additional sanction against the greater evil inherent in the use of a dangerous weapon during the commission of certain crimes. There is, therefore, no imposition of double jeopardy,[23] just as there is no double jeopardy because of heavier punishment for being a multiple offender in addition to the ordinary punishment for the crime.[24]

Accordingly, without deciding whether the double jeopardy guarantee is retrospectively applicable, we hold that if it is, there was no violation of it in this case.

The order of the district court will be affirmed, without prejudice to further proceedings under Part II of this opinion.

18. Galloway v. Beto, 421 F.2d 284 (5 Cir. January 6, 1970) ; Booker v. Phillips, 418 F.2d 424 (10 Cir. 1969). Compare United States ex rel. Wolak v. Yeager, 385 F.2d 478, 480 (3 Cir. 1967), cert. denied Wolak v. Yeager, 390 U.S. 999, 88 S.Ct. 1205, 20 L.Ed.2d 1171 (1968).

19. Price v. Georgia (No. 269), in which certiorari was granted at 395 U.S. 975, 89 S.Ct. 2138, 23 L.Ed.2d 764 (1969).

20. See North Carolina v. Pearce, 395 U.S. 711, 718, 89 S.Ct. 2072, 2077, 23 L.Ed. 656 (1969), quoting Ex parte Lange, 85 U.S. (18 Wall.) 163, 173, 21 L.Ed. 872 (1873) : " * * * [T]he Constitution was designed as much to prevent the criminal from being twice punished for the same offense as from being twice tried for it."

21. State v. Hodgson, 44 N.J. 151, 164–165, 207 A.2d 542, 549 (1965) cert. denied Hodgson v. New Jersey, 384 U.S. 1021, 86 S.Ct. 1929, 16 L.Ed.2d 1022 (1966) ; State v. Bennett, 75 N.J. Super. 207, 212, 182 A.2d 591, 594 (1962) ; State v. Buffa, 65 N.J.Super. 421, 426–427, 168 A.2d 49, 51–52 (1961).

22. Cf. Sigler, Double Jeopardy 63–9 (1969) ; Note, 75 Yale L.J. 262, 299, et seq. (1965).

23. See cases cited supra, n. 21.

24. Spencer v. Texas, 385 U.S. 554, 559–560, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967) and cases there cited; Davis v. Bennett, 400 F.2d 279, 280–283 (8 Cir. 1968), cert. denied 395 U.S. 980, 89 S.Ct. 2137, 23 L.Ed.2d 768 (1969) ; Anderson v. Wilson, 397 F.2d 255, 256 (9 Cir. 1968), cert. denied 394 U.S. 1019, 89 S.Ct. 1641, 23 L.Ed.2d 45 (1969).