57 N.J. Super. 260 (1959)
154 A.2d 640
STATE OF NEW JERSEY, RESPONDENT,
v.
IVORY JONES, APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted September 28, 1959.
Decided October 2, 1959.
*262 Before Judges GOLDMANN, FREUND and HANEMAN.
Mr. Ivory Jones, appellant pro se.
Mr. Vincent P. Keuper, Monmouth County Prosecutor, attorney for respondent (Mr. Solomon Lautman, First Assistant Prosecutor, of counsel and on the brief).
*263 The opinion of the court was delivered by GOLDMANN, S.J.A.D.
On January 2, 1957 the Monmouth County grand jury returned three indictments respectively charging (1) appellant Jones, Eddie Gainor, Robert Majors and Dorothy Maddox with robbery by forcibly taking $169 from John Brakefield on November 1, 1956; (2) Jones, Gainor and Majors with robbery by forcibly taking $85 from Everett Kennedy on October 31, 1956; and (3) Jones, Gainor and Charles McKay (in four counts) with (a) armed robbery of $500 from Laura Letson on October 23, 1956; (b) robbing her of that amount; (c) assaulting her with intent to rob; and (d) atrocious assault and battery upon her.
The indictments were tried together, Jones being represented by court-assigned counsel. The jury found Jones guilty on the first indictment, not guilty on the second, and guilty under only the third and fourth counts of the third indictment. Gainor was found guilty on the first two indictments and not guilty on the third. The charges against Majors were dismissed. We do not know what disposition was made of those against Maddox or McKay.
Jones was sentenced to State Prison on February 21, 1957 to serve a term of 12-15 years on the first indictment and 10-12 years on the third, the sentences to run consecutively.
On April 8, 1957 he filed a notice of appeal with the Monmouth County Clerk, who at once mailed a conformed copy to the Superior Court Clerk. The latter did not docket and file the notice because of nonpayment of the requisite fee. On May 1, 1957 Jones wrote the County Court judge who had presided at his trial, advising that he was not going to pursue his appeal but would seek a further hearing before him. He said he had secured the services of the attorney who represented him at the trial. Jones then wrote the Superior Court Clerk on May 3, 1957, stating that he desired to discontinue his appeal (never perfected), and on May 29 moved for a new trial. The county judge conducted a hearing on July 30 and denied the application. Two days later *264 Jones filed a notice of appeal from the refusal to grant him a new trial. Leave to appeal as an indigent and application for assignment of counsel were denied August 19, 1957. Nothing further happened until September 10, 1958, more than a year later, when Jones wrote the deputy attorney general about securing assigned counsel and a transcript. The matter eventually came to the attention of the Supreme Court which directed that Jones be permitted to file a notice of appeal as an indigent. He did so. His appeal is addressed solely to the County Court judgment of conviction on February 21, 1957.
Without question, the appeal is entirely out of time and ought not to be considered. However, we have obtained a copy of the transcript of the trial and will dispose of the matter on the merits in order to bring it to a finality.
Defendant first argues that the State failed to make out a prima facie case of guilt. A reading of the entire record shows how baseless the contention is. The prosecution clearly established a strong prima facie case, including the positive identification of Jones as the leader of the holdup party on each of the two occasions for which he was convicted  the Brakefield robbery as well as the atrocious assault and battery upon Mrs. Letson and the assault with intent to rob her. The verdict comported with the proofs. The jury discharged its duty with unusual care, finding Jones not guilty whenever there was doubt, and guilty where the evidence clearly pointed to his having committed the crimes charged. It did the same in the case of Gainor.
Defendant next maintains that the trial judge erred in failing to instruct the jury regarding the distinction it should draw between convictions for disorderly persons offenses and those imposed for other offenses, when considering Jones' criminal past  and this despite a request so to charge. The claim is that R.R. 3:7-7 was violated. It was not. The rule allows parties to submit written requests to charge at the close of the evidence. Here the request in question was orally and informally made during *265 the course of the trial; there was none in writing after the defense had rested. Even were the request properly made, the trial judge was not obliged to deliver the charge in the exact language requested.
Defendant has misquoted the charge in his brief. He asserts that the trial judge instructed the jury that all of defendant's criminal record had been allowed in evidence for the purpose of testing credibility. The transcript is to the contrary. In the course of the trial defense counsel, and then the prosecutor, questioned Jones about his convictions of crimes committed in this State and elsewhere. The judge was careful to limit the prosecutor's cross-examination to convictions involving offenses of a more serious nature; there was no inquiry into disorderly persons acts. Cf. State v. Block, 119 N.J.L. 277, 282 (Sup. Ct. 1938). An FBI report was allowed in evidence, after defense counsel had examined it and said he had no objection to its admission. And when the time came to charge the jury the judge said:
"There has been a great deal of discussion here with respect to the criminal record of the defendant Ivory Jones, and it was at the defendant's insistence that said record is in evidence and may be taken with you to the jury room. I instruct you now that regardless of what may be on said F.B.I. investigation, the only thing that you are to concern yourselves with and consider are proper convictions of misdemeanors, and I charge you that the criminal record of the defendant Jones as to prior conviction was allowed to be introduced by the court for the purpose of testing the defendant's credibility, and I charge you that the fact, however, that he was convicted at former times of other offenses is no proof that he is guilty of the offense or offenses with which he is now charged. Such evidence of proper former convictions was admitted for the purpose of aiding you in determining the weight and credit to be given to this defendant's testimony. The law assumes that a witness who has been convicted of a crime is not as worthy of belief as a witness who has never been convicted of crime, and the fact of conviction is one that you may take into consideration in weighing his testimony." (Italics ours)
This charge does not, as defendant claims, run counter to what was said by our Supreme Court in State v. Cooper, 10 N.J. 532, 555-556 (1952). The State has the unquestioned *266 right to prove prior convictions of misdemeanors and high misdemeanors to affect a defendant's credibility, and may inquire of him to that end. N.J.S. 2A:81-12; State v. Cooper.
Finally, defendant contends he was denied his constitutional right to compulsory process. N.J. Const. 1947, Art. I, par. 10. He claims that the court failed to secure two witnesses for him, Irene Franklin and "Bud" Franklin, who would have testified that Jones was in a bar in Newark at the time of the Letson incident, which occurred on the evening of October 23, 1956 in Long Branch, many miles away. The only reference to these witnesses was on the first day of the three-day trial, when assigned counsel addressed the court just after the jury had retired for the noonday recess:
"MR. SAGOTSKY: May I report something to your Honor, please? The Prosecutor's Office has attempted to subpoena two witnesses requested by defense counsel, one Ira Franklin and one Irene Franklin. It seems that one Ira Franklin is employed and is working, and the other, Irene Franklin, is under doctor's care. That is the report that was given to me about an hour ago, in an attempt to serve these subpoenas.
THE COURT: Well, all we can do is cooperate in any possible way, which of course we have done. The Prosecutor has it, and if you have any other information contrary to what has been reported to you, why, all right. The Court will recess until two o'clock."
There was no further reference to these witnesses at any time during the rest of the trial. Absent from the record is any demand during the remaining two days that the prosecutor produce the Franklins in court, or any suggestion that the judge use his good offices to obtain the presence of witnesses on defendant's behalf. Jones took the stand in his own defense. Significantly, there was no attempt to establish an alibi through him.
Under the Federal Constitution and most state constitutions, including ours, one accused of a crime has the right to have compulsory process to procure the attendance of witnesses he may need in his defense. The right thus *267 given is that of issuing subpoenas, as in civil cases, and causing them to be served (cf. Brewer v. Hunter, 163 F.2d 341 (10 Cir. 1947)), but not of burdening the prosecution with the task of securing the attendance of witnesses. And where a prosecutor does try to help  as he might in the case of an indigent defendant  he should not be considered as thereby guaranteeing the production of the witnesses under any circumstances. Here there was a bona fide attempt by the prosecutor's office to reach the Franklins, and defense counsel was apparently satisfied with the measure of cooperation that had been extended his client.
The claim of deprivation of the constitutional right to compulsory process was also raised at the hearing of defendant's motion for a new trial, together with the claim that there was newly discovered evidence. At that hearing counsel represented that there were two witnesses, a Tom Berry and a Rose Berry, who (Jones had told him) knew where he had been on the night of October 23, 1956. This is the first time these two witnesses were mentioned. Counsel said they had not appeared and "were not forced to testify." He also mentioned that there were two other witnesses who would know where Jones had been on the night of the 23rd: "one was a `Stan' at the Ridgewood Bar [Newark], and the other was a Franklin."
When counsel was asked by the county judge when Jones had informed him of these witnesses, he replied,
"Well, I'm not sure whether he told that to me before the trial, when I interviewed him at the jail, or not. He may have, but if he did state it to me at that time it slipped my mind, or at least I didn't do anything about it until the trial. At the trial, then, of course, which took three days, during the first day of the trial, if I recall correctly, was when the incident took place that I have just related."
The last reference was to defense counsel's request to the prosecutor to subpoena the witnesses he wanted. (It is to be recalled that at the noon recess of the first day of the trial, the only witnesses mentioned were the two Franklins *268  not the two Berrys, "Stan" or "a Franklin.") The trial judge then pressed his inquiry:
"THE COURT: In other words, as I understand it now  and I want to understand this clearly  that it was during the course of the trial that some action was taken by you through the Prosecutor's Office in an effort to procure these two witnesses, is that correct?
MR. SAGOTSKY: Yes, sir.
THE COURT: And notwithstanding that effort, and notwithstanding the issuance of a subpoena, these witnesses that Mr. Jones said would establish contrary evidence to the State's case placing him at the Letson hold-up did not appear?
MR SAGOTSKY: That's right."
We find that there was no trespass upon defendant's constitutional rights in the circumstances of this case. Further, it would appear that all that the four witnesses mentioned by defense counsel at the hearing on the motion for a new trial could possibly have established was that Jones was in Newark on the night of the 24th, one day after the Letson incident.
As for the suggestion at the motion hearing that the defense had newly discovered evidence, the claim must fall under the principle announced in State v. Bunk, 4 N.J. 482, 486 (1950), and many other decisions. The tests a party must meet to entitle him to a new trial on the ground of newly discovered evidence are that (1) the evidence is material to the issue and not merely cumulative, or impeaching, or contradictory; (2) it has in fact been discovered since the trial, and could not have been discovered before trial by the exercise of due diligence; and (3) it probably would change the result if a new trial were granted. We find that the alleged newly discovered evidence meets none of these tests. The trial judge correctly denied the motion.
In the course of the hearing on the motion defense counsel made two other points which we think should be disposed of in this decision. The first was that certain material evidence was withheld from the jury  specifically, *269 the beer bottle defendant had handled at the liquor store where Mrs. Letson was employed was not brought before the jury to establish, by fingerprints, that defendant had actually been in the place. A similar charge was made about a gun that Mrs. Letson testified was used in the holdup  it was not brought before the jury to check for fingerprints. We find nothing in this claim. The State did not rely upon the bottle or the gun in placing Jones at the scene of the crime. Rather, it did so through Mrs. Letson's positive identification of defendant as her assailant.
The second matter relates to the claim that Charles McKay, who testified on behalf of the State, was insane at the time of the trial and so not qualified to testify. Our reading of McKay's testimony does not indicate that he was insane. There was no proof of his insanity; we have only counsel's bare allegation that he was insane. It was for the jury to assess McKay's credibility, and even had it accorded no value whatsoever to his testimony, it still had before it Mrs. Letson's identification.
The judgment of conviction is affirmed.