**UNITED STATES of America ex rel. Bobby L. MAYBERRY, Petitioner,**

v.

**Howard D. YEAGER, Respondent.**

**Civ. No. 605–69.**

United States District Court, D. New Jersey.

Jan. 7, 1971.

Powell, Davis, Dietz & Colsey, by Eugene T. Radcliffe, Mount Holly, N. J., court appointed, for petitioner.

Martin J. Queenan, Burlington County Pros., Myron H. Gottlieb, Asst. Pros., on the brief, for respondent.

## OPINION AND ORDER

COHEN, District Judge:

Petitioner, Bobby L. Mayberry, seeks a writ of habeas corpus pursuant to the provisions of 28 U.S.C. § 2241, et seq., attacking the legality of his confinement in the New Jersey State Prison, as a result of his conviction by a jury of robbery (N.J.S.A. 2A:141–1), while armed (N.J.S.A. 2A:151–1), upon which he was sentenced to consecutive terms of imprisonment of 12 to 15 and 3 to 5 years respectively.

Upon the filing of an answer by the respondent, Howard D. Yeager, Principal Keeper of the New Jersey State Prison, the cause was duly referred to the Honorable Michael Keller, Jr., United States Magistrate for the District of New Jersey, pursuant to General Rule 40, subd. E (3)[1] of the Local Rules of this Court, for his preliminary review, report and recommendation, as to whether a hearing is warranted.

An extensive and independent review has been made of the pleadings, pertinent state court records, transcript of testimony, and briefs, as required by 28 U.S.C. § 636(b) (3) and Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.

---

1. Rule 40E. "*Additional Duties of Magistrate.* The Court may assign to full-time magistrates * * * duties in addition to those conferred by law or by the Rules of Criminal Procedure for the United States District Courts. Such duties shall not be inconsistent with the Constitution and laws of the United States and shall include, but not be restricted to:

"(3) preliminary review of applications for post-trial made by individuals convicted of criminal offenses, and submission of a report and recommendation to facilitate the decision of the district judge having jurisdiction over the case as to whether there should be a hearing."

*Note:* Distinction is made in practice, of course, between a hearing held for arguments of counsel on questions of law and a plenary hearing to resolve disputed issues of fact. The above rule pertains only to the latter. See: 28 U.S.C. § 2243. It was fashioned by the Court as a pilot project pursuant to 28 U.S.C. § 636(b) (3) and designed to assist District Judges in meeting the ever increasing burden of petitions for Post-Trial relief. It was as well an effort to provide more timely relief to the petitioners and an "in-depth" screening of petitions in the preliminary stages.

2d 770 (1963). As well, a very careful assessment has been made of the Report and Recommendation submitted by the United States Magistrate Michael Keller, Jr., wherein he recommends that the petition be dismissed on the grounds that no plenary hearing is warranted and that this Court certify that there exists no probable cause for appeal. We are in full accord with that recommendation for the reasons so excellently stated by the Magistrate. A copy of his Report and Recommendation is attached hereto and filed as part of this Opinion and Order.

Now, therefore, it is on this 7th day of January, 1971 ordered and adjudged that the petition of Bobby L. Mayberry for a writ of habeas corpus be and is dismissed hereby; and

It is further ordered that the Report and Recommendation of the United States Magistrate be and is hereby adopted as the Opinion of this Court; and

Furthermore, it is certified that no probable cause exists for an appeal herefrom.

## REPORT AND RECOMMENDATION

Pursuant to General Rule 40, subd. E(3)[1] of the Local Rules of this Court, this matter was referred to me as United States Magistrate for preliminary review, report and recommendation as to whether a hearing is required.

The petitioner, Bobby L. Mayberry, seeks issuance of a writ of *habeas corpus* pursuant to the provisions of 28 U.S.C. § 2241, et seq., attacking the legality of his confinement in the New Jersey State Prison. He was convicted in October, 1966 of armed robbery on August 12, 1965 of a Shop Rite Market. (N.J. S.A. 2A:141–1; 151–5). In November, he was sentenced to consecutive terms of imprisonment for both convictions of 12 to 15 and 3 to 5 years, respectively; these terms to run consecutively to a life sentence imposed in January, 1966 for a murder conviction.[2]

On appeal, the conviction for armed robbery was affirmed by the Superior Court of New Jersey, Appellate Division, in its unpublished *per curiam* opinion of June 6, 1968 (Exhibit R–9). Petitions for certification and *certiorari* were denied, respectively, by the New Jersey Supreme Court, State v. Mayberry, 52 N.J. 493, 246 A.2d 452 (1968) and by the United States Supreme Court, 393 U.S. 1122, 89 S.Ct. 1003, 22 L.Ed.2d 128 (1968).

The following is a summary of the grounds asserted for relief:

1. The Trial Court's exclusion of the petitioner's children (ages 5, 6 years and 15 months) during the trial deprived him of a public trial.

2. Denial of a motion for change of venue because of publicity prior to trial and failure to grant a continuance.

3. Denial of a motion to sequester the jury; failure of Court to permit proper voir dire; failure of Court to furnish proper instructions to jury with respect to news media reports during trial; failure of Court to grant an adjournment of trial.

4. Admission of testimony that "getaway" auto was stolen and failing to give limiting instructions concerning such testimony.

5. The conviction and sentence for the separate offenses of robbery, while armed, constituted double jeopardy.

---

1. Adopted May 28, 1969 providing for references of applications for post-trial relief to United States Magistrates for preliminary review and their report and recommendation to the District Judge as to the necessity for a hearing.

2. State v. Mayberry, 52 N.J. 413, 245 A.2d 481 (1968). The murder was committed at the Rickshaw Inn, Camden County, on August 27, 1965, and petitioner, with others, was tried in January, 1966, found guilty of first degree murder with a jury recommendation of life imprisonment and so sentenced.

6. Failure of the Prosecutor to produce one of two defense witnesses the Court had ordered him to produce. (This ground was urged before the Superior Court of New Jersey · but not before the New Jersey Supreme Court "through inadvertence of the Public Defender".)

7. (a) Misconduct of Prosecutor in questioning two defense witnesses during a continuance the defense had obtained for the purpose of reinterviewing said witnesses to prepare for a reply to the State's rebuttal.

(b) Informal and *ex parte* action by the Trial Judge in advising the Prosecutor that such procedure was permissible.

8. Admission of fingerprint evidence obtained during an illegal detention subsequent to an illegal arrest. (The petition also indicates that this ground was not urged before the New Jersey Supreme Court "through inadvertence of the Public Defender." However, an examination of Exhibit R–10, page 14, discloses that it was listed without any reference thereto in the brief.)

With repetitions, a total of 34 grounds for relief were submitted on the appeal to the Superior Court of New Jersey, as set forth in Exhibits R–1 to R–4, inclusive. The Petitioner and Respondent have submitted various State records, briefs, etc., which have been marked as exhibits and are set forth in an *Appendix* filed herein. In one form or another, they included the grounds now urged. It would appear that ground #6, above, may not have been submitted to the New Jersey Supreme Court. However, it is concluded that the petitioner has substantially and sufficiently exhausted his state remedies in good faith and is properly before this Court. Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963); Brown v. Allen, 344 U.S. 443, 73 S.Ct. 397, 97 L.Ed. 469 (1953).

The *per curiam* opinion of the Superior Court of New Jersey, Appellate Division, contained no specific findings and merely concluded that the grounds urged were without merit. Some of the grounds raised here involve only issues of law and require no hearing. Others involve mixed questions of law and fact, but it is not urged that any new or different evidence would be offered. As to the latter, however, the transcripts of the hearing on the pretrial motion and the trial, together with the various briefs, etc., submitted, constitute sufficient bases for disposition of these grounds without a hearing. Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L. Ed.2d 770 (1963).

The testimony may be summarized as follows:

At approximately 4:20 P.M., August 12, 1965, at the Shop Rite Market, Burlington, N. J., an armed robbery was committed during which three store employees were present at various times. The armed robber was seen by one of the employees leaving the area in a car which was described as to make, color and partial license number. This car was later found in a nearby area where residents had seen a man enter another car, which was also described as to make and color, and bearing Delaware license plates. The petitioner owned a car of that make and it was licensed in Delaware. The petitioner was arrested in Chattanooga, Tenn. on September 5, 1965, waived extradition and was returned to New Jersey on September 8, 1965. He was identified in a line-up the following day by two of the store employees. In addition, a latent thumb-print found on the "getaway" car was identified as that of the petitioner. His defense was *alibi*.

The grounds urged will be treated *seriatim*.

### 1. *Public Trial.*

■ The petitioner has alleged a violation of his right to a public trial pur-

suant to the Sixth Amendment. At the beginning of the fourth day of trial, the defendant's wife and three children, aged 5, 6 years, and 15 months, were seated in the first row of the public area directly behind the defendant. During the previous three days of trial, the children were not present and Mrs. Mayberry sat in a different location. The Prosecutor objected to their presence on the ground that their appearance was solely for the purpose of creating sympathy. Counsel for the defendant advised the Court that he had suggested that they appear on what was thought would be the last day of trial "because I felt that it would aid this man and I feel it incumbent upon me to do everything possible" (Exhibit R–18:334–13). He further indicated that his purpose was to show that the defendant was a family man who was not the type who would commit such a crime of violence. There had already been testimony as to the number of children and their ages. Defense counsel further advised the Court that he had suggested that the wife and children be seated in the first row directly behind the defendant. The Court indicated that the presence of the children was nothing more than an attempt to arouse sympathy. During the colloquy, the 15 month old child started to cry and was taken out of the courtroom. The Court alluded to such disruption during the trial but apparently based his ruling on the issue of sympathy. He directed that the children be removed from the courtroom for the balance of the trial.

If a public trial was not accorded to the petitioner, the Due Process clause of the Fourteenth Amendment was violated. In re Oliver, 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682 (1948). Public trial is essentially a right of the accused. Geise v. United States, 265 F.2d 659 (9 Cir. 1959). There is, however, a correlative right to preserve the public's right to be informed about criminal prosecutions in the best interests of all citizens. Lewis v. Peyton, 352 F.2d 791 (4 Cir. 1965); United States v. Sorrentino, 175 F.2d 721 (3 Cir. 1949). As was indicated by the Court in United States v. Kobli, 172 F.2d 919 (3 Cir. 1949), the courts are not in complete accord as to the extent of the right but all agree that it is subject to some limitation. The right is not a limitless prerogative, Lacaze v. United States, 391 F.2d 516 (5 Cir. 1968). Such a Constitutional right is subject to the inherent power of a trial judge to preserve orderliness and fairness in the Constitutional sense of due process of law. The Constitution was never intended as a mere haven for criminal defendants. United States ex rel. Bruno v. Herold, 368 F.2d 187 (2 Cir. 1966); State v. Genese, 102 N.J.L. 134, 130 A. 642 (E & A 1925). "The knowledge that every criminal trial is subject to contemporaneous review in the forum of public opinion is an effective restraint on possible abuse of judicial power." In re Oliver, supra, 333 U.S. at page 270, 68 S.Ct. at page 506. In Note 25, on the same page, 68 S.Ct. page 506, the Court quoted from 1 Cooley, Constitutional Limitations (8th ed. 1927):

> "The requirement of a public trial is for the benefit of the accused; that the public may see he is fairly dealt with and not unjustly condemned, and that the presence of interested spectators may keep his triers keenly alive to a sense of their responsibility and to the importance of their functions * * *."

The decisive factor is whether the *public* was excluded. Via v. Peyton, 284 F.Supp. 961 (D.C.Va.1968). The only exclusion was of the three children; aged 5, 6 years, and 15 months. Their first appearance was on what was thought would be the closing day of the trial. The purpose certainly could not have been that their presence would insure that the accused was "fairly dealt with" and that the triers would be "keenly alive to a sense of their responsibility". As contended by the State, it could be considered to be a blatant attempt to arouse sympathy in the jury. A Judge has a duty to insure that a trial be conducted with fairness, and

that sympathy, passion, prejudice or bias be eliminated. That duty is not a one-way street. The State is entitled to equal consideration. The partial exclusion was a proper exercise of the Court's discretion and did not extend further than the circumstances warranted in this particular case. The "public" was not excluded, nor was the petitioner subjected to "Star Chamber" proceedings contrary to the provisions of the Sixth Amendment; quite to the contrary—petitioner was afforded a full and public trial, the primary purpose of which was to insure a fair trial; the presence or absence of his children was but an incidental circumstance within the sole discretion of the trial judge and had no bearing on Constitutional due process of law.

### 2. *Change of venue; Continuance.*

Prior to trial, a motion was made for a change of venue because of publicity concerning the petitioner. The publicity complained of did not relate to the indictment then pending in Burlington County, but to the petitioner's trial and conviction for murder, with two co-defendants, in adjoining Camden County, approximately seven months prior to the time the motion was heard. The transcript of the hearing of the motion (Exhibit R–16:5–8 to 9–3; 10–22 to 12–14) discloses that no evidence was submitted as to the type and volume of publicity or as to the effect it might have had on members of the community at that time. Counsel relied on the Court's "personal knowledge of what has transpired", (R–16:8–6 to 8). Counsel did state that counsel in the murder trial had furnished "two voluminous boxes of newspapers and each one had a clipping or a news item regarding the murder trial." Apparently, these were not submitted to the Court. Attached to the present petition, the petitioner has furnished a "Publicity Report". There is no indication that such report was submitted to the Court on the motion for a change of venue; and, if it had been,

the bare statistics have little, if any, probative value.

A change of venue is judicially discretionary. It should be granted only if, in the opinion of the trial judge, a fair and impartial trial cannot be afforded the accused in the forum of indictment. R.4:3–3, formerly R.R.3:6–2; State v. Wise, 19 N.J. 59, 73, 115 A.2d 62 (1955); State v. Ravenell, 43 N.J. 171, 180–181, 203 A.2d 13 (1964). The burden of proving an allegation that adverse publicity results in a deprivation of the right to a fair trial rests, of course, upon the pleader. Darr v. Burford, 339 U.S. 200, 218, 70 S.Ct. 587, 94 L.Ed. 761 (1950). Petitioner's reliance on Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966) is misplaced. In that case, there was a clear indication that there had been "massive, pervasive and prejudicial publicity" prior to and during trial; and that the trial was conducted in a "circus atmosphere". In contrast, the present petitioner was afforded ample *voir dire* examination. Only seven prospective jurors were excused in the process of selection. There is nothing in the record to suggest that the jury was tainted so as to prevent an impartial trial. Such a contention is utterly lacking in merit. In fact, counsel for the petitioner stated that the jury as finally selected was satisfactory.

### 3. *Denial of Sequestration of Jury; Voir dire; News Media; Requested adjournment of trial.*

The petitioner's request for sequestration of the jury was based on anticipated publicity during the trial and a likelihood of "out-of-court" discussions among the jurors. The request was properly denied, as being merely speculative.

At the time of trial, sequestration was generally limited to capital offenses (former R.R.3:7–2[f]). However, even then, the Court had the discretionary authority now set forth in R.1:8–6 to order sequestration under *extraordinary*

circumstances for the protection of the accused, the jurors and in the interests of justice. None of these elements was present. The mere possibility that newspaper accounts may be read by jurors during a trial is not such an extraordinary circumstance; otherwise, every jury should be sequestered. Trial Judges invariably admonish jurors to avoid outside influences during a trial, including the news media. It is only wishful thinking to believe that when jurors read newspapers that they may not see and read an account of the trial, in spite of an admonition not to do so; that they ignore the admonitions of the Court not to permit such accounts to affect their impartiality and ability to afford the defendants a fair trial is most unlikely. When a Court has properly instructed jurors to disregard news accounts and not to discuss the case with others, it may be presumed that jurors under oath and accepted as impartial will continue to be so. Proper and sufficient continuing instructions were given to the jury in the present case. The petitioner has not presented, nor is there any indication in the record that the jurors had read any of the newspaper accounts during trial. The bare allegation of prejudicial publicity has no basis in the record.

■ The claim that the Court abused its discretion in denying the motion for an adjournment of the trial requires little discussion. The basis of the request was that if the petitioner offered himself as a witness he would be required to disclose his prior conviction for murder, which was then on appeal. The adjournment requested was until after a hoped for reversal of petitioner's conviction by the New Jersey Supreme Court, which in fact did not occur. The record indicates that *no reference was made at any time* during the trial to the *prior* conviction; therefore, the anticipated dilemma asserted by the petitioner never materialized. When the petitioner personally addressed the Court on this subject at the pretrial hearings, he also alluded generally to the need of more time for

preparation; no such request was pressed by counsel and the record indicates that an able and vigorous defense was presented. Furthermore, the record also discloses that the trial did not commence until one month thereafter, providing ample time for preparation of a defense to the crime charged.

4. *Admission of testimony regarding stolen "getaway" car.*

There was testimony, by two persons present during the holdup, which identified an automobile in which the individual who committed the holdup left the premises. This car was found shortly after the occurrence in an area where residents saw a man—not identified—enter another car. The second car was described as to make, and stated to have Delaware license plates; and that it was similar to a car owned by the petitioner. The owner of the first car testified that it was not until he was called by the police that he learned that his car was missing from where it had been parked. He also testified that he did not know the petitioner and had not loaned the car to him. A subsequent expert witness identified a latent thumb-print removed from the car as belonging to the petitioner.

■ The petitioner claims that this testimony of the car owner indicated that the car had been stolen, and that the admission of such testimony, as evidence of a previous crime for which he had not been convicted, constituted prejudicial error. State v. Kociolek, 23 N.J. 400, 129 A.2d 417 (1957); United States v. Chibbaro, 361 F.2d 365, 379 (3 Cir. 1966). Although no objection was made to the offered testimony, and while the admissibility of evidence is generally a matter of appellate and not collateral review, the issue should be considered on *habeas corpus* if there is a serious question of fundamental unfairness, United States ex rel. Saunders v. Myers, 276 F.2d 790 (3 Cir. 1960); or if there is a reasonable possibility that the evidence complained of might have

contributed to the conviction; Fahy v. Connecticut, 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171 (1965).

The only evidence against the petitioner was as set forth above in the summary of the testimony. It was incumbent upon the State to show that the thumb-print was not placed on the car during its proper use with permission of the owner. That is precisely what the State offered by way of proof. Such proof was proper.

■ Assuming, *arguendo*, that the offer of such testimony did have for its purpose a showing that the crime of auto theft had been committed, it would have been admissible as an exception to the general exclusionary rule that evidence of other crimes is irrelevant upon a trial for a particular crime, unless logically connected as an integral part thereof. As simply stated in *Kociolek,* supra, 23 N.J. at page 418, 129 A.2d at page 427: "one crime may have been perpetrated as a preparation for, or means of committing, concealing or escaping from another."

### 5. *Double Jeopardy.*

■ The petitioner claims that the imposition of the sentence of 12–15 years for robbery (N.J.S. 2A:141–1) and an additional consecutive sentence of 3–5 years for committing the robbery while armed (N.J.S. 2A:151–5) violated his guarantee under the Fifth Amendment against being "twice being put in jeopardy of life and limb". The New Jersey Courts have held that these statutes do not constitute multiple punishment for the same offense. State v. Hodgson, 44 N.J. 151, 207 A.2d 542 (1965); State v. La Vera, 35 N.J.Super. 256, 113 A.2d 829 (App.Div.1965); State v. Buffa, 65 N.J.Super. 421, 168 A.2d 49 (App.Div.1961). However, since it was held in Benton v. Maryland, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), that the guarantee of the Fifth Amendment against double jeopardy is enforceable against the States pursuant to the Fourteenth Amendment,

and such holding is to be applied retroactively, North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), we must look to federal standards to determine whether there was double jeopardy in the Constitutional sense. The identical proposition was advanced in our Court of Appeals but held not to constitute "double jeopardy". United States ex rel. Mertz v. New Jersey, 423 F.2d 537 (3 Cir. 1970).

### 6. *Failure of Prosecutor to produce defense witness.*

■ At the hearing of one of a number of pretrial motions, request was made that the State procure the attendance, as defense witnesses, of the petitioner's brother-in-law and sister-in-law (Mr. and Mrs. Neeble), who resided in Illinois. The Court directed the Prosecutor to do so and such direction was incorporated in an order, a copy of which is attached to the present petition. Mrs. Neeble, petitioner's sister-in-law, appeared and testified that she and her husband left for their home in Illinois between 2:00 and 3:00 P.M. on August 12, 1965. On cross-examination, she admitted that she had previously stated to an investigator for the State that they had left about 1:00 P.M. The trial transcript contains no reference to the absence of Mr. Neeble nor was any objection made because of his absence.

The petitioner has urged that the State's failure to produce the witness constituted a prejudicial suppression of evidence. State v. Vigliano, 50 N.J. 51, 232 A.2d 129 (1967). There is no allegation that the Court's order was ignored. Although Mr. Neeble did not, Mrs. Neeble did appear. Art. 1, par. 10, N.J.Constitution 1947, does not constitute a guarantee by the State that witnesses will be *produced* at the trial. State v. Jones, 57 N.J.Super. 260, 263, 154 A.2d 640 (App.Div.1959). A similar provision of the Sixth Amendment does not require that the government be successful in making witnesses available upon a defendant's demand. What is re-

**208**

quired is that there be due diligence in a good faith attempt to produce the witness. Maguire v. United States, 396 F. 2d 327 (9 Cir. 1968), cert. den. 393 U.S. 1099, 89 S.Ct. 897, 21 L.Ed.2d 792. More is required of the petitioner than the supposition that the non-appearance of a witness constituted a suppression of evidence. Mrs. Neeble is the sister of the petitioner's wife. It can safely be assumed that the reason for the failure of Mr. Neeble to appear was known to her and to the petitioner. Yet, in no proceeding from the time of the trial down to the present has the petitioner made any allegation that a good faith attempt was not made to produce the witness.

Finally, it is highly doubtful that Mr. Neeble could have furnished testimony which would have been very helpful to the petitioner. Although the *alibi* testimony of Mrs. Mayberry's brother, Lloyd Simmons, and that of the petitioner's brother, Orville, remained uncontradicted as to when they had departed from the home of the petitioner, the remaining *alibi* testimony was attacked with some success. As indicated above, the testimony of Mrs. Neeble had, at the very least, been neutralized. Assuming that Mr. Neeble could have testified to a departure time which would have supported the *alibi*, such testimony would probably have been susceptible to similar neutralization or other challenge because of his wife's original inconsistent statement of a 1:00 P.M. departure.

### 7. *Interview of Defense alibi witnesses.*

Defense witnesses Dutton and Wehry testified that the petitioner was at his home on August 12, 1965 at a time of day which would have made it impossible for him to have been at the scene of the holdup at the time of its commission. Primarily, their recollection of the exact date was related to the date of delivery of a new car to Wehry. Their testimony was not conclusive and was rebutted by evidence that the car was not delivered until six days after the critical date. The rebuttal testimony was given on Friday afternoon. Defense counsel pleaded surprise and a requested adjournment was granted over the week-end to ascertain from the purchaser (Wehry) whether his records would show different purchase and delivery dates; or, in the alternative, whether he may not have been driving a new car loaned by the seller while awaiting delivery of his car.

At the resumption of the trial, a motion was made for a mistrial. It was based on the fact that during the week-end recess an investigator from the Prosecutor's Office had interviewed both Dutton and Wehry at a Delaware State Police Office, where they had been requested to appear by the State Police. During argument on the motion, defense counsel stated that the witnesses had not been threatened or intimidated; and that the purchase records of the car agency were shown to them to indicate that they were mistaken in the date to which they had testified. There was a representation that someone had advised the witnesses that a change in testimony might subject them to a charge of perjury. Defense counsel stated he would have furnished similar advice, if asked. This did not constitute a threat or intimidation. The only asserted ground of the motion was that the Prosecutor "overstepped the bounds of fair play" in interviewing the witnesses at this stage of the proceedings. There was no Constitutional infirmity here.

There is no prohibition against interviewing any prospective witness in a civil or criminal case. The witness is not required to submit to the interview, but may do so. The purpose of the requirement that a defendant who intends to rely on an *alibi* must submit the names and addresses of the witnesses (R.3:11–1, formerly R.R.3:5–9) is "to avoid surprise at trial by the sudden introduction of a factual claim which cannot be investigated unless the trial is recessed to that end." State v. Baldwin, 47 N.J. 379, 388, 221 A.2d 199, 204 (1966). Whether these witnesses had been interviewed prior to trial was not

disclosed; however, the record does show that the State effectively rebutted their testimony. If there was to be a change in their testimony, the State had a continuing right to investigate what factual claim would be made.

 During the argument on the motion for a mistrial, the trial judge disclosed that the Prosecutor had inquired whether there was any legal obstacle to an investigation of the testimony of the two *alibi* witnesses and that he informed the Prosecutor that there was none. The petitioner now claims such *ex parte* action by the court was fatally prejudicial. Although it may not be advisable to seek or furnish such an "advisory opinion" under certain circumstances, in the present case there was not such a judicial intrusion which might have prejudiced any right of the petitioner to a fair trial. The Constitution of the United States guarantees a fair trial, not a perfect one. Lutwak v. United States, 344 U.S. 604, 619, 73 S. Ct. 481, 97 L.Ed. 593 (1953).

At the close of the argument on the motion, defense counsel advised the Court that the defendant wished to make a "representation" that the witnesses had been intimidated. The record indicates that, since the defendant was in confinement, the representation would of necessity have been something told to him and clearly inadmissible. Furthermore, no offer was made to present witnesses, or other proof; consequently, there was no denial of an offer of proof in contravention of the principles set forth in State v. Johnson, 46 N.J. 289, 216 A.2d 392 (1965). The Court's refusal to permit the representation was proper.

#### 8. *Fingerprint evidence.*

The final ground urged by the petitioner is that he was arrested in Chattanooga, Tennessee, upon the execution of an invalid arrest warrant issued by an Acting Magistrate of Cherry Hill Township, N. J.; and that fingerprints taken during a subsequent illegal detention in Cherry Hill violated his rights under the Fourth Amendment. Davis v. Mississippi, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed. 2d 676 (1969); Bynum v. United States, 104 U.S.App.D.C. 368, 262 F.2d 465 (1958).

A summary of pertinent facts follows:

On September 4, 1965 a complaint was filed in the Cherry Hill Township Municipal Court charging the petitioner with the unlawful possession of an automobile (N.J.S. 2A:139–1)[3] on August 27, 1965. The offense set forth in that complaint was subsequent to and did not relate to the offense of armed robbery committed on August 12, 1965 which is the subject of this petition.[4]

On the basis of the above unlawful possession complaint, a warrant of arrest was issued by an Acting Magistrate who was the Magistrate of Brooklawn Borough. The arrest was made in Chattanooga, Tennessee on September 5, 1965 by a Chattanooga city policeman accompanied by three New Jersey police officers. The petitioner was taken to a Chattanooga Court on September 6, 1965 and held without bail for extradition proceedings. The petitioner waived extradition the same day and arrived at Cherry Hill, N. J. on September 8, 1965, at which time he was fingerprinted.

---

3. In New Jersey, said offense is a high misdemeanor equivalent to a common law felony.

4. Petitioner has made reference to the fact that he was not prosecuted on that charge. This Court had occasion to examine the record of the earlier murder trial in Camden County in connection with an application for habeas corpus by a co-defendant in that case. Judicial notice will be taken of the fact that the car involved in that crime was the subject of the complaint here in issue. After the murder conviction, it is understandable why the State did not prosecute the lesser charge.

The record disclosed that this set of fingerprints was sent to the New Jersey State Police identification bureau; and, after comparison with the latent print found on the "getaway" car used in the armed robbery, it was determined that the print on said car was that of the petitioner. (There was expert testimony to this effect). On the day following that on which the prints were taken in Cherry Hill, N. J., a complaint was filed in Burlington County charging the offense which is the subject of the instant petition.

The allegation that the fingerprints were taken during an illegal detention is based on a claim that the arrest warrant was invalid because: (1) the complaint did not contain sufficient facts to indicate probable cause for the issuance of the arrest warrant; Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); and (2) that the Acting Magistrate who issued the warrant did not have jurisdiction to do so because he had not been designated Acting Magistrate by letter as required by former R.R.8:13–2.[5]

█ The State has not contradicted the fact that the Magistrate of Cherry Hill Township did not file a written designation of the Brooklawn Magistrate as Acting Magistrate of the Municipal Court of Cherry Hill. In State v. Sagarese, 34 N.J.Super. 126, 111 A.2d 777 (App.Div.1955), the Acting Magistrate failed to file the oath of office required by former R.R.7:10–5. It was held that said provision was merely a procedural administrative direction and did not operate to disqualify the Acting Magistrate. The filing of a written designation is a similar procedural administrative direction and failure to do so did not deprive the Acting Magistrate of jurisdiction. Such a written designation and filing is merely a proof of authority not a conference of power and authority. R.1:12–3(a), N.J.Court Rules, 1969.

█ Assuming, arguendo, that the complaint did not meet the tests of Spinelli and Aguilar, supra, in establishing probable cause to support the issuance of an arrest warrant, the circumstances in this case did not support the allegation that there was an illegal detention at Cherry Hill.

The arrest in Tennessee was not effected by executing the New Jersey warrant. It could not be executed outside the territorial limits of New Jersey; former R.R.3:2–2(c), now R.3:3–3(b), N.J.Court Rules, 1969. Although New Jersey police officers were present, the only person with authority to make the arrest was the Chattanooga police officer; and said arrest was made pursuant to the Uniform Criminal Extradition Act. N.J.S. 2A:160–1 et seq.; Tennessee Laws, 1951, c. 240. The return of fugitives from one state to another is a federal rather than a state matter. Foley v. State, 32 N.J.Super. 154, 108 A.2d 24 (App.Div.1954); Art. 4, § 2, cl. 2 of the United States Constitution and 18 U.S.C.A. § 3182.

There is no question that upon filing the complaint the petitioner was charged with a criminal offense in New Jersey. Pursuant to Section 14 of the Uniform Act (N.J.S. 2A:160–22), upon reasonable information that an accused stands charged in the courts of a state with a crime punishable by imprisonment for a term exceeding one year, the arrest may be made by a peace officer of the asylum state with or without a warrant. In Burton v. New York Cent. & H. R.R. Co., 245 U.S. 315, 38 S.Ct. 108, 62 L.Ed. 314 (1917), it was held that Article IV, § 2, subdiv. 2 of the Constitution places no limitation upon the power of the States to arrest in advance of extradition proceedings; it deals merely with the conditions under which one state may demand rendition from another and under which the alleged fugitive may resist compliance by the asylum state.

There can be little doubt that the petitioner was a "fugitive" at the time of

---

5. Such designation is not now required if the designee is himself a judge of the municipal court. R.1:12–3(a), N.J. Court Rules, 1969.

his arrest in Tennessee. In Hogan v. O'Neill, 255 U.S. 52, 41 S.Ct. 222, 65 L. Ed. 497 (1921) the Court stated:

"To be regarded as a 'fugitive from justice,' it is not necessary that one shall have left the state for the very purpose of avoiding prosecution; it being sufficient that, having committed there an act constituting a crime, he afterwards has departed from its jurisdiction, and when sought to be prosecuted, is found in another state."

The Tennessee authorities complied with Section 10 of the Uniform Act (N. J.S. 2A:160–18) by affording the petitioner his Constitutional right to an extradition hearing at which he could test the legality of his arrest and the validity of the request for extradition. The purpose of such hearing is to determine whether the requisition by the Executive of the demanding state should be granted by the issuance and service of a rendition warrant. It is at such hearing that documentary evidence, such as an affidavit in support of a complaint, must meet the test of probable cause before extradition is granted. In Kirkland v. Preston, 128 U.S.App.D.C. 148, 385 F.2d 670 (1967), the Court stated, at page 674:

"We hold that, *for purposes of extradition*, the Section 3182 'affidavit' does not succeed in 'charging' a crime unless it sets out facts which justify a Fourth Amendment finding of probable cause." (Emphasis supplied.)

The petitioner expressly and knowingly waived his right to such hearing, consented to be returned to New Jersey, and thereby waived all procedures incident to his extradition proceedings. The law is clear that Constitutional rights can be knowingly and intelligently *waived*. Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); Brady v. United States, 397 U. S. 742, 748, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). There is no claim made,

nor does the record disclose, that such waiver was not "an intentional relinquishment or abandonment of a known right or privilege." Johnson v. Zerbst, supra. Under the facts of this case, the petitioner consented to be returned to the authorities of New Jersey and such detention here was not illegal.

In addition, the record does not disclose any pretrial motion to suppress the fingerprint evidence, nor was any objection made during trial to its admission on the ground now asserted.[6] Despite the absence of such objection, both New Jersey Rule R.2:10–2 and Rule 52(b) of the Federal Rules of Criminal Procedure provide that a court may notice "plain error" even though not raised by counsel. However, the rule "is appropriate only in exceptional cases where it is necessary to prevent grave miscarriages of justice or to preserve the integrity of the judicial proceedings." United States v. Carter, 401 F.2d 748, 750 (3 Cir. 1968), cert. den. 393 U.S. 1103, 89 S.Ct. 905, 21 L.Ed.2d 797 (1969). No such compelling situation appears.

The circumstances in this case do not even approach those in Davis v. Mississippi, 394 U.S. 721, 89 S.Ct. 1394, 22 L. Ed.2d 676 (1969), where a police "dragnet" resulted in an illegal detention-fingerprinting of a few dozen persons who did not voluntarily accompany the police; or in Bynum v. United States, 104 U.S.App.D.C. 368, 262 F.2d 465 (1958), where police arrested and fingerprinted the brother of an accused as a suspected accomplice, when he made inquiry at the police station. As stated by Justice Harlan in *Davis*, 349 U.S. at page 728, 89 S.Ct. at page 1398:

"There may be circumstances, falling short of the 'dragnet' procedures employed in this case, where compelled submission to fingerprinting will not amount to a violation of the Fourth Amendment even in the absence of a warrant. * * *"

6. The objection to admissibility made during trial was on the grounds of (1) chain of custody of the car containing

the latent print and (2) whether the copy of the master fingerprint card used by the expert witness was the best evidence.

In the present case, there was honest and good faith action on the part of authorities in apprehending one in connection with a crime related to a felony-murder of which he was later convicted. If there was legal error in the method employed for his apprehension, it was harmless beyond a reasonable doubt in light of uncontradicted eye-witness identification and testimony connecting him with the second car used in the armed robbery, which is the subject matter of the present petition. See: Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

It is recommended that the petition be dismissed and that the Court certify that there is no probable cause for appeal.

Respectfully submitted,

(s) Michael Keller, Jr.

December 30, 1970 Michael Keller, Jr.
United States Magistrate